UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| GRACIE MAY FARMER and ) | |
| WILLIAM LINCOLN FARMER ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:05-cv-299 |
| v. ) | |
| ) | Judge William B. Mitchell Carter |
| WAL-MART STORES EAST, L.P. ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM

I. Introduction

This case arises from a slip and fall which Gracie May Farmer sustained at one of the defendant's stores on September 22, 2004. Mrs. Farmer asserts claims of negligence and negligent misrepresentation against Wal-Mart Stores East, L.P. (Wal-Mart). Mr. Farmer brings a claim for loss of consortium. The matter is now before the Court on Wal-Mart's motion for summary judgment (Doc. 18) on the ground that there is no evidence of what caused Mrs. Farmer to fall and that none of Wal-Mart's communications to plaintiffs or plaintiffs' sons could reasonably be interpreted as promising to pay Mrs. Farmer's medical bills. For the reasons stated herein, Wal-Mart's motion for summary judgment shall be GRANTED as to Mrs. Farmer's claim of negligence and DENIED as to Mrs. Farmer's claim of negligent misrepresentation.

II. Facts

Gracie May Farmer was eighty-one years old on August 7, 2006 when she gave her deposition in this matter. On September 22, 2004, Mrs. Farmer went to the Wal-Mart store in

1

Cleveland, Tennessee to have a prescription filled. (Gracie May Farmer's deposition at 35)[1] (GMF 35.) While at the store, she slipped and broke her hip coming out of a stall in the women's restroom. (GMF 31-32). Mrs. Farmer testified she entered the first stall in the women's restroom at the front of the store. (GMF. 37). As she entered the stall, she saw a piece of tissue on the floor of the stall, but she did not step on it. (GMF 37-38, 49). As she exited the stall, she fell right in front of the stall, (GMF 36), hitting her head against the wall. (GMF 43). She could not remember if she lost consciousness or not. (GMF 42). At the time she fell, there was no-one in the bathroom with her; her husband was outside the bathroom waiting for her. (GMF 37). She did not step on the tissue paper as she exited the stall and she does not think the tissue paper caused her to fall. She did not see anything else that might have caused her to fall as she was not looking for anything, and she did not notice after the accident whether her clothes were dirty or wet. (GMF 38, 51). When asked by Wal-Mart's counsel, "Mrs. Farmer, is it fair for me to say that you might have simply lost your balance?" she replied, "I don't know." (GMF 41-2).

After she fell, Mrs. Farmer was unable to get up, and she called for help but no-one heard her. (GMF 53). After about five minutes, another customer came into the bathroom, saw her, and summoned help. (GMF 53-4). She was taken by ambulance to the Bradley Memorial Hospital (the hospital) where she remained for five days. (GMF 59, 61). She then transferred directly to a rehabilitative facility where she remained for 40 days. (GMF 61). She personally had no conversation with a Wal-Mart representative about her medical bills or who would pay them. (GMF 59-60).

---

[1]Gracie May Farmer's deposition shall hereinafter be cited as "(GMF <u>page number</u>)."

William Lincoln Farmer, Mrs. Farmer's husband, was 84 at the time his deposition was taken on August 7, 2006. (William Lincoln farmer deposition at 4-5)[2]. On the day his wife fell, someone summoned him and he entered the bathroom and saw her lying on the floor. He asked her what happened and she said she didn't really know. (WLF 7). He did not see anything on the floor because he was too concerned about his wife to look. (WLF 7). He has not had any telephone conversations with anyone from Wal-Mart about the accident. (WLF 8). Instead, because he does not hear well, he has had his son, William Lincoln Farmer, Jr., talk with the Wal-Mart representatives. (WLF 8).

William Lincoln Farmer, Jr., known to his family as "Junior," first talked with a Wal-Mart employee while in the hospital visiting his mother on the evening of the day she fell. (WLF 8, William Lincoln Farmer, Jr.'s deposition at 6)[3]. Junior testified in his deposition that a woman from the Wal-Mart store where Mrs. Farmer fell called the hospital and "asked how they were doing and said to tell them not to worry about any– the last thing she said was tell them not to worry about anything." (WLFJ 7). Junior understood this statement to mean Wal-Mart was going to pay his mother's medical bills. (WLFJ 7). One of the mornings Mrs. Farmer was still in the hospital, the same woman called the hospital again and spoke to Junior to ask how his parents were doing. (WLFJ 8-9). During this conversation, the woman did not say anything about not worrying. (WLFJ 10). On the second or third night his mother was in the hospital and while Junior was there visiting her, a Wal-Mart representative called the hospital room from

---

[2] William Lincoln Farmer's deposition shall hereinafter be cited as "(WLF page number)."

[3] William Lincoln Farmer, Jr.'s deposition shall hereinafter be cited as "(WLFJ page number)."

Arkansas, and Junior talked to her. The Wal-Mart representative gave Junior a claim number, asked how his mother was doing, and told him, "tell them not to worry about anything." (WLFJ 12). There was no specific mention of paying medical bills during this conversation. (WLFJ 12). In the Spring of 2005, after his parents had not received a hospital bill, Junior went to the billing department for the hospital to ask about the bill. He was told the bill had been sent to Wal-Mart. (WLFJ 14-15). [4]

Tommy Lynn Farmer is one of Mrs. Farmer's four sons. He spoke over the telephone to a female Wal-Mart representative from Arkansas three or four times about his mother's accident. (Tommy Farmer's deposition at 6). The calls took place one week, then approximately one month, and then approximately three months after his mother's accident. He is sure it was the same woman, but he could not remember her name. (TF 6). In the first conversation, the woman indicated she was continuing to investigate, that Wal-Mart would "check into it and get back with him," and she said, "[d]on't worry about a thing." (TF 10-11). Tommy testified the woman "insinuated" that Wal-Mart would pay the medical bills. (TF 9). In the second conversation about a month later, the woman called Tommy at his office and asked him how his mother was doing. There was no discussion about medical bills. (TF 13). In the third conversation, the woman told Tommy Wal-Mart had completed its investigation and concluded Wal-Mart was not at fault and would not be paying for anything. (TF 13).

In support of its motion for summary judgment, Wal-Mart has submitted copies of three letters to Grace Farmer from Donna Frazier of Claims Management, Inc, the claims handler for Wal-Mart and its insurance company. The first letter is dated September 23, 2004, one day after

---

[4]Tommy Farmer's deposition is hereinafter cited as "(TF page number)."

the accident.  The letter provides a 1-800 number to call and makes no mention whatsoever of paying medical bills or other expenses.  The second letter, dated February 17, 2005, asks for "the status" of Mrs. Farmer's claim and provides a telephone number where Ms. Frazier can be reached.  Again, no mention of medical bills or expenses is made.  The third letter, dated February 23, 2005, states the investigation indicates no negligence on the part of Wal-Mart and Wal-Mart is denying the claim.

Plaintiffs allege in their complaint that because of Wal-Mart's representations, they made no claim against their health insurance for the medical bills Mrs. Farmer incurred and, consequently, the period of time to claim coverage expired, and their insurance company now refuses to cover the medical expenses arising from the accident at Wal-Mart. (Plaintiffs' complaint ¶ ¶ 7-8).

### III. Analysis

*A. Standard of Review*

Under Fed. R. Civ. P. 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The burden is on the moving party to show conclusively no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411; *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202 (1986); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter summary judgment. *Id.*; *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411.

*B. Discussion*

*1. Plaintiffs' Negligence Claim*

To establish a negligence claim under Tennessee law, a plaintiff must prove: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). In the premises liability context, Tennessee courts have stated a business owner owes a duty of reasonable care under all the attendant circumstances to all persons who come upon his property with his consent, express or implied. *Hudson v. Gaitan*, 675 S.W.2d 699, 703-04 (Tenn. 1984) (abolishing common law distinction between duties owed an invitee and a licensee). A business owner breaches this duty of care "when it allows a dangerous condition or defect to exist on the premises if that condition or defect was created by the owner, operator or his agent; or if the condition is created by someone else, when the business owner had actual or constructive notice that the dangerous condition or defect existed prior to the injury." *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 858 (6th Cir. 2003); *Hardesty v. Serv. Merchandise Co., Inc.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997). Thus, in order to prevail in a premises liability action, the plaintiff must show that "the condition (1) was caused or created by the owner, operator, or his agent or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident." *Trebing v. Fleming Companies, Inc.*, 40 S.W.3d 42, 46 (Tenn. Ct. App. 2001).

The defendant is correct that there is a complete dearth of evidence to support a finding that a dangerous condition or defect on Wal-Mart's floor caused Mrs. Farmer to fall. Based on

7

her own testimony, she could have just as easily lost her balance as she could have slipped on something on the floor. Given the complete lack of evidence on this critical issue and the fact that the plaintiff bears the burden of proof , the Court concludes the plaintiffs have failed to show there is a genuine issue of material fact as to this issue and the defendant is entitled to judgment as a matter of law on the plaintiffs' negligence claim.

*2. Plaintiffs' Negligent Misrepresentation Claim*

In *Robinson v. Omer,* 952 S.W.2d 423, 426-27 (Tenn. 1997) , the Tennessee Supreme Court set out the requirements for a claim of negligent misrepresentation in Tennessee:

> Tennessee has adopted Section 552 of the *Restatement (Second) of Torts* "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney,* 822 S.W.2d 592, 595 (Tenn.1991). Section 552 provides, in pertinent part, as follows:
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions,* is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. *Restatement (Second) of Torts,* § 552 (1977) (emphasis added).

*See also*, *John Martin Co. Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991) (same); *Tarter v. Palumbo*, 453 S.W.2d 780, 784-785 (Tenn. 1970) (same). The restatement breaks the tort of negligent misrepresentation down into four elements:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; *and*
> (2) the defendant supplies faulty information meant to guide others in their business transaction; *and*
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; *and*
> (4) the plaintiff justifiably relies upon the information.

*John Martin Co., Inc.*, 819 S.W.2d at 431. "The information may be either direct or indirect. In that regard, the forseeability of its use is critical to liability. 'Because the misinformation is negligently rather than intentionally supplied, courts have been careful to limit liability to only those whose use of the information is reasonably foreseeable.' " *Id. (quoting* Restatement (2d) Torts § 552, Comments 1977).

In viewing the evidence in the light most favorable to the plaintiff, the relevant facts are these: while Mrs. Farmer was still in the hospital following her fall, two representatives from Wal-Mart telephoned Mrs. Farmer's room. One of these representatives was a claims agent for Wal-Mart. Both representatives inquired as to Mrs. Farmer's welfare and told Mrs. Farmer's son to tell his parents, "don't worry about anything." The Farmer family interpreted this statement to mean Wal-Mart would cover Mrs. Farmer's expenses incurred as a result of her fall in Wal-Mart's store. Mrs. Farmer relied upon this communication in not submitting her medical expenses to her insurance carrier for reimbursement. In its memorandum in support of its motion, Wal-Mart disputes that any of its representatives told the Farmers not to worry about anything.[5] Wal-Mart further argues that even if one assumed such a communication was made by a Wal-Mart representative, that communication is not a representation by Wal-Mart that it

---

[5]Wal-Mart did not submit affidavits to this effect, however.

9

would cover Mrs. Farmer's medical bills and it was not reasonable for plaintiffs to rely upon such a communication in deciding not to file claims for medical expenses with Mrs. Farmer's insurance carrier. Wal-Mart further argues that the fact that such a communication was allegedly made to Mrs. Farmer's son instead of Mrs. Farmer herself renders the communication even less reliable.

Considering this matter very carefully, the Court cannot say that no reasonable jury could find for the plaintiffs on this claim. An argument can be made that such a communication, considering the context in which it was given, could reasonably have been interpreted by the Farmers as an indirect representation that Wal-Mart would pay Mrs. Farmer's medical bills arising from her fall in its store. The fact that such a statement was made to Mrs. Farmer's son as opposed to Mrs. Farmer herself is of little consequence given that, according to the son, the Wal-Mart representatives told him to convey the communication to his mother and father. Further argument can be made that the Farmers justifiably relied upon the communication in deciding not to file claims with Mrs. Farmer's medical insurance carrier, at least up to the point when Wal-Mart explicitly informed the plaintiffs in writing and by telephone that Wal-Mart would not be covering Mrs. Farmer's medical expenses.[6] Undoubtedly, strong arguments can be made to support Wal-Mart's position as well, but it is not the Court's function to weigh the evidence or assess the credibility of the witnesses at this stage of the litigation. The Court concludes plaintiffs have come forward with sufficient evidence to show genuine issues of material fact exists as to the negligent misrepresentation claim rendering summary judgment on

---

[6]The record does not identify the specific date on which the plaintiffs contend it became too late to submit Mrs. Farmer's medical bills to her insurance carrier for payment.

this claim inappropriate.

## IV. Conclusion

For the reasons stated herein, Wal-Mart's motion for summary judgment shall be GRANTED as to Mrs. Farmer's claim of negligence and DENIED as to Mrs. Farmer's claim of negligent misrepresentation. An appropriate order shall enter.

ENTER:

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE